PRODUCERS' OIL CO. v. UNITED STATES et al.

(Circuit Court of Appeals, Eighth Circuit. June 6, 1917.)

No. 4603.

RECEIVERS ⊂⊃16—CONFLICTING OIL LEASES—RIGHT TO RELIEF.

In a suit by the United States, on behalf of the Creek Nation, for the cancellation of oil and gas leases authorized by the state of Oklahoma and involving ownership of the bed of the Cimarron river, by stipulation of parties the lessees were permitted to continue operations, and a receiver was appointed to collect and hold the royalties for the benefit of the prevailing party. Intervener, as lessee of land of an Indian allottee on the river, claimed ownership of a portion of the bed in his lessor adversely to both parties. *Held,* that the receivership between the original parties was not adequate to protect intervener's rights pending the litigation, and that, while not entitled to an injunction to restrain operation by the state's lessees because of other facts, it was entitled to protection by bond, or by the impounding of the net proceeds of such operations on that portion of the river bed claimed by it.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the United States against lessees of the State of Oklahoma. The Producers' Oil Company, intervener, appeals from an order denying a preliminary injunction. Reversed.

F. B. Dillard, of Tulsa, Okl., and Burdette Blue, of Bartlesville, Okl. (F. W. Dillard, of Tulsa, Okl., and A. L. Beaty, of New York City, on the brief), for appellant.

W. P. McGinnis, Sp. Asst. U. S. Atty., and R. C. Allen, both of Muskogee, Okl., and W. A. Ledbetter, of Oklahoma City, Okl. (D. H. Linebaugh, U. S. Atty., and James C. Davis, Assistant to Creek National Attorney, both of Muskogee, Okl., on the brief), for appellees.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. This is an appeal by the Producers' Oil Company from an order denying it a preliminary injunction. The branch of the case in which it was taken involves the title to the bed of the Cimarron river, in Creek county, Okl., adjacent to a tract of upland allotted to Mabel Dale, a member of the Creek Tribe of Indians, and the right to extract oil and gas therefrom. There are three sets of

claimants: (1) The United States, on behalf of the Creek Nation; (2) the state of Oklahoma and Frank Brown, its lessee; and (3) the appellant, as lessee of Mabel Dale. The land in question is within the limits of the grant of August 11, 1852, by the United States to the Creek Nation of Indians in fulfillment of the treaty of February 14, 1833 (7 Stat. 417).

The United States asserts that the Cimarron river is nonnavigable, that the land surveyed and allotted to Mabel Dale stopped at highwater mark, and that the adjacent river bed, not having been surveyed or embraced in the allotment, remained the property of the Creek Nation. It also claims that, even if the river were a navigable stream, still the bed thereof would have passed to the Creek Nation by the grant of 1852, and that it was not held in trust for the future state of Oklahoma. The state of Oklahoma and its lessee, Frank Brown, claim the river is navigable, and that upon the admission of the state into the Union it succeeded to the legal title to the bed, according to the familiar rule, and was exclusively authorized to lease it for the extraction of oil and gas. The appellant, the Producers' Oil Company, claims the river is nonnavigable, and that, though the survey lines of the Mabel Dale allotment meander the bank, her title, including that of appellant, her lessee, extends to the thread of the stream, and embraces the part of the bed in which Frank Brown is operating.

The main suit was brought by the United States December 27, 1913, on behalf of the Creek Nation, to cancel various oil and gas leases of the river bed, executed under the authority of the state of Oklahoma, and to enjoin the lessees from operating under them. On the same day the state and its commissioners of the land office intervened in the suit and asserted title in the state and the validity of the leases. Three days later, pursuant to a stipulation between counsel for the United States and for the commissioners of the land office of the state, an order was entered appointing a committee of two persons representing the parties to the stipulation to superintend the operations under the state's leases, and also appointing a receiver to collect the royalties and to disburse them under the orders of the court to the party adjudged owner of the river bed. The leases provided for royalties of 29 per cent. of the production. The excess production over the royalties was to be retained by the state's lessees as their own property. About a year later, January 16, 1915, the appellant intervened for the protection of its rights under the lease from Mabel Dale. That lease provided for a royalty to her of one-eighth of the production. The appellant applied for a preliminary injunction restraining the state's lessees from operating in the river bed adjacent to her allotment. The application was denied, and this appeal followed.

The briefs and arguments have taken a wide range, but we think that at the present stage of the litigation our consideration should be more limited. Aside from the contention of the United States that it should prevail in either case, the rights of the parties depend upon whether the Cimarron river is navigable or not. There is a common knowledge that some of our rivers are navigable, and courts may take judicial notice thereof; but the navigability of many others, being less certain,

is a question of fact requiring proof. Harrison v. Fite, 148 Fed. 781, 78 C. C. A. 447. The Cimarron river is of the latter class, and we should not determine its character as to navigability upon the showing now in the record. We think, however, that the appellant should be protected while the case is pending below. There is some doubt that the existing receivership is available to it. The order appointing a committee to superintend the operations of the state's lessees and appointing the receiver was at the instance of appellant's adversaries, and the terms were those of a stipulation to which it was not a party. Part of the language of the order is broad enough to embrace any claimant, though not then a party to the suit; but still there would be some reason for claiming that the general terms should be restrained to the particular intent, which was for the benefit of those who stipulated. But, if the receivership is available to appellant, the terms and conditions of it are insufficient for its protection.

The attitude of the United States and the state is that of proprietors of land, whose interest in underlying oil and gas is generally expressed in terms of rentals or royalties. They were not, like the appellant, engaged in the business of drilling wells and extracting oil and gas; and the mere impounding of the royalties during the pendency of the suit, which they stipulated for themselves, would not be equitable for the latter. If appellant is right as to its title, and much at least may be said in its favor, it is entitled to all the oil and gas that can be drawn from the river bed and to such adequate protection during the litigation as may be practicable. If the parties now operating there are unable or unwilling to give a bond for such purpose, a receiver should be appointed, with authority and direction to offset the wells on the shore and to pay all proceeds of the product into court, less the reasonable allowed costs and expenses of conducting the work. Strictly speaking, the trial court was right in denying appellant's application for a temporary injunction. Appellant had wells on the upland near the line, and the injunction asked would have given it the fruits of title, regardless of the result of the suit. The oil and gas under the river bed would have been drained through the upland wells, without a definite way of determining appellant's liability, if it failed at final hearing. But in a case so exceptionally circumstanced as this we think the court should have imposed conditions upon the denial of a temporary injunction, or given the other temporary protection above mentioned.

To clear the situation for a renewed consideration of this matter, the order denying a temporary injunction will be reversed.